IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § § | 5-20-CR-00454-JKP-4 |
| vs. | § § | 5-23-CV-1450-JKP |
| (4) JOSEPH LLOYD VONALLMAN, | § § § | |
| *Defendant.* | § § § § § | |

# REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Jason K. Pulliam:**

This Report and Recommendation concerns Movant Joseph Lloyd Vonallman's § 2255 Motion to Vacate. *See* Dkt. No. 579. The District Court referred the motion by text order dated November 17, 2023, and then again by Order, *see* Dkt. No. 621, after the case was reassigned following the original District Judge's recusal, *see* Dkt. 616. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Motion to Vacate, Dkt. No. 579, should be **DISMISSED WITHOUT PREJUDICE**. The Movant should be **GRANTED** an out-of-time appeal, and the Clerk of Court should be ordered to re-enter the criminal judgment on the docket, thereby restarting the time for appeal under Federal Rule of Appellate Procedure 4(b)(1)(A). *See U.S. v. Gaytan-Ortiz*, 308 F. App'x 798, 800 (5th Cir. 2009) (citations omitted).

**Factual and Procedural Background**

In September 2020, the Government charged Defendant Joseph Lloyd Vonallman and others via indictment. Counts 7 and 8 charged Vonallman with possession with intent to distribute cocaine and unlawful possession of a firearm. *See* Dkt. No. 11. At the time of those alleged offenses, multiple prior felony convictions precluded Vonallman from lawfully possessing firearms. A superseding indictment later charged Vonallman additionally in Count 10 with unlawfully possessing other firearms. *See* Dkt. No. 178.

On July 28, 2022, Vonallman pleaded guilty to Counts 8 and 10 of the superseding indictment. Dkt. No. 445. On November 2, 2022, Vonallman was sentenced to a term of 175 months' imprisonment followed by three years of supervised release. Dkt. No. 488. On November 9, 2022, an amended judgment against Vonallman was entered. Dkt No. 495. He did not file a direct appeal.

On November 14, 2023, Vonallman filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Dkt. No. 579. On August 15, 2024, the Court held an evidentiary hearing on the Motion to Vacate at which counsel for both parties appeared, Vonallman appeared personally and testified, and his counsel Alex Scharff testified as a witness. Dkt. No. 679. Three other witnesses also testified.

Vonallman's sister Melinda Argumedo testified on August 15 about her recollections following imposition of the sentence. She testified that she and Vonallman's other sisters in attendance at the November 2, 2022, sentencing hearing "were all shocked" and "upset" by the sentence imposed. Dkt. No. 686 at 12:11-15. She noted that at the time attorney Sharff was also "shocked" and "upset" by the sentence Vonallman received. *Id.* at 13:11-14, 17. And she

explained that the family wanted to file an appeal, and that she told Scharff they wanted to appeal. *Id.* at 13:7-9.

Yvonne Connally, another sister, also testified on August 15 about the sentencing. Connally explained that she too was "surprised" after the sentencing and that various family members present at the sentencing hearing told Sharff that he needed to file an appeal. *Id.* at 19:2-4, 10-25 & 20:1-7. She explained that after things died down a bit following the sentencing and various family members left, she spoke briefly with Scharff. In that conversation, Scharff explained that he next needed to speak with Vonallman "and see what he wants to do." *Id.* at 20:14-15. After a later conversation Connally had with Vonallman, Connally came away with the impression that Vonallman and Scharff were going to meet and speak about the possibility of an appeal. *Id.* at 22:1-9.

Next, Vonallman's sister Verna Lozano testified at the August 15 hearing. She also attended the sentencing, and she also came away "upset" after the Court imposed the sentence. *Id.* at 30:23-24. She testified that in the hallway outside the courtroom immediately after the sentencing, she told Scharff to file an appeal. *Id.* at 31:1-7.

Vonallman also took that stand briefly at the August 15 evidentiary hearing. He testified, as follows, that he indicated to Scharff that he wanted to file an appeal:

> Q. After you were sentenced, did you tell Mr. Scharff you wanted to appeal?
> A. Yes, ma'am.
> Q. What did you say?
> A. I just told him I wanted to appeal.
> Q. Okay. When did you tell him that?
> A. Right after the sentencing, when the marshals were taking me out.

*Id.* at 34:12-19. On cross-examination, however, Vonallman conceded that he was "not sure" that Scharff had heard him. *Id.* at 35:23-24. Indeed, Vonallman related that Scharff only indicated at

the time that "we would talk later." *Id.* at 36:2-4; *see also id.* at 37:4. According to Vonallman, he never spoke with Scharff again. *Id.* at 36:5-11.

Finally, Vonallman's lawyer Alex Scharff also testified. Scharff first explained that he has never declined to file a notice of appeal when asked to do so by the client. *Id.* at 40:21-24. He explained that he would follow instructions from the client to appeal even if he believed the appeal was without merit and even if he were in the process of withdrawing from the representation. *Id.* at 40:21-41:7. But according to Sharff's recollection, Vonallman never asked him to file an appeal.

Scharff testified that immediately after the Court imposed a sentence, Vonallman didn't say anything to Scharff before Vonallman was removed from the courtroom. *Id.* at 45:21-23; *id.* at 46:6-9 ("And as soon as Mr. Vonallman was sentenced, I mean, they took him out immediately. It was just like, you're sentenced, the judge pronounces sentence, and he was taken out."). Scharff also indicated that had his client requested that he file an appeal he would have done so, even if he deemed the appeal without any merit:

> Q. Is it fair to say that after the sentence was imposed, because of the plea agreement, you did not believe that an appeal would have merit?
> A. That is correct.
> Q. Having said that, would you have still filed a notice of appeal had you been asked?
> A. Yes

*Id.* at 51:13-52:9.

Scharff explained that from his perspective, Vonallman hadn't expressed an interest in appealing because he knew, having waived his right to appeal in the plea agreement, that any appeal would be fruitless. Scharff explained that he had represented Vonallman previously and had known him for many years. And Scharff explained that he and Vonallman discussed Vonallman's plea agreement in great detail prior to Vonallman signing it. *See id.* at 44:3-25.

Scharff further testified that he would have spoken further with Vonallman about an appeal after sentencing but only if Vonallman had expressed interest in appealing. *See id.* at 48:19-49:13.

Scharff acknowledged that he spoke with the family immediately after the appeal and that the family and Scharff were upset with the sentence imposed:

> A. Well, okay. So people were upset.
> Q. Sure.
> A. I was, frankly, upset. I had really thought that the judge, Judge Garcia, would have sentenced him to a lesser term of imprisonment, lesser than the 175 months. So I was - I felt a little -- I felt disappointed. And his family, they were -- they were -- they were not happy with the sentence either.
> And so the discussions were about the sentencing, what happened and -- but there was nothing like, "Oh, by the way, Joseph wants to appeal." That was not relayed to me, outside in the -- in the hallway.

*Id.* at 50:8-19. Scharff didn't recall anyone requesting that he file an appeal. *See id.* at 51:8-10; *see also id.* at 58:11-22. And he didn't recall suggesting at that time that he could file an appeal because, in his view, he had already discussed with Vonallman his right to appeal:

> No. I did not suggest [that Mr. Vonallman can file an appeal]. When I was -- when I talked to him about what he wanted to do with this case, whether to have a trial or to have a plea, I explained the appellate rights. Like, you know, you can sign a plea agreement, but you're going to have to give up your rights to appeal your sentence on direct appeal or in a 2255, unless there is government misconduct. You want to -- want to raise that issue, or ineffective assistance of counsel.
> I also talked to him about just pleading to the indictment. And then if the sentencing comes back different than what we had hoped or expected and you wanted to appeal that, then you could appeal that.
> So I explained to him that option, too, or to actually have a trial, plead not guilty and fight the charges. I explained all -- those three options to him.

*Id.* at 51:13-52:2.

Scharff also testified regarding some text messages he exchanged with Ms. Connally after sentencing:

> Q. Okay. So what I'm trying to figure out is, at any point did Ms. Connally send you a text message asking you to file a notice of appeal?
> A. She did not.

> Q. Did she ask -- did she send you a text message inquiring about the status of an appeal?
> A. She did not.
> Q. Did she send a text message asking why you had not appealed?
> A. No.

*Id.* at 53:8-17.

Finally, Scharff confirmed in his testimony that after Vonallman was sentenced, Scharrf did not speak to Vonallman again:

> Q. . . . . So once he was sentenced, Mr. Vonallman was sentenced, did you talk to him at any time?
> A. I don't -- I did not.
> Q. So after he was sentenced, did you have any conversations here at counsel table?
> A. No. After sentencing?
> Q. Correct.
> A. No. He was whisked out of the courtroom, like, right away.

*Id.* at 56:7-15. And Scharff confirmed that the reason he didn't speak to Vonallman about an appeal at any point after sentencing was because he had already discussed the topic at length before a sentence was imposed:

> A. . . . I had spent so much time going over his options when we were discussing the evidence in the case, the plea bargain, the efforts of trying to get a better plea bargain. I had covered all of those -- the right to appeal and the different types of pleas, whether it's by plea bargain, plead to the indictment or plead not guilty.
> Q. Okay.
> A. I thought I had explained it at an overkill --
> Q. Yes.

    A. -- for the most part. . . .

*Id.* at 57:2-11; *see also id.* at 58:7-10 (Q. Okay. Did you discuss with him whether he wanted to appeal or what could happen next? A. I did that prior to sentencing. I did not do it again after sentencing."); *id.* at 60:13-15.

    Scharff related that he had at least one conversation with Ms. Lozano after sentencing. In that conversation Ms. Lozano conveyed to Scharff her anger and frustration at Vonallman's sentence. Scharff testified that he did not recall ever receiving an instruction or request to file an appeal but he did concede that it was possible that Vonallman's family expressed, "'We need to attack this thing [the sentence] somehow.'" *Id.* at 65:1-9.

### Analysis

    At issue is whether the failure to file an appeal constitutes ineffective assistance of counsel entitling Vonallman to relief. "To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant." *U.S. v. Tighe*, 91 F.4th 771, 774 (5th Cir. 2024) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). Scharff's failure to thoroughly consult with Vonallman about an appeal *after sentencing*, including ascertaining his client's wishes, constitutes ineffective assistance of counsel. Vonallman suffered resulting prejudice because there is a reasonable probability that but for counsel's conduct, Vonallman would have appealed.

    **A.    Counsel's Performance Was Deficient.**

    Counsel has a "constitutionally imposed duty to consult with the defendant about an appeal when there is a reason to think *either* (1) that a rational defendant would want to appeal . . . *or* (2) that this particular defendant reasonably demonstrated to counsel that he was

interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000) (emphasis added). This consultation should typically, depending on the circumstances,[1] take place *after* sentencing because that is when counsel can have an informed, concrete—and not merely hypothetical—conversation with the client about the "advantages and disadvantages of taking an appeal." *U. S. v. Cong Van Pham*, 722 F.3d 320, 323 (5th Cir. 2013). Moreover, to "consult" in this context means two things: (1) "advising the defendant about the advantages and disadvantages of taking an appeal" *and*, importantly for present purposes, (2) "making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478.

*Tighe* informs the Court's conclusion that counsel's performance here was deficient. 91 F.4th at 771-776. In *Tighe*, the defendant's attorney did not directly ask the defendant *after* sentencing if he wanted to appeal. *Id.* at 775. Instead, the attorney put the onus on the defendant, later telling the court that the defendant never called from jail to ask about appealing. *Id.* The Fifth Circuit found unreasonable the attorney's failure to consult with the defendant post-sentencing because, under the circumstances presented, a rational defendant would have wanted to appeal and the defendant reasonably demonstrated his interest in appealing. *Id.* The Court explained that one indication that the defendant would be interested in appealing was the fact that he and others, including defense counsel, were "shocked" by his sentence. *Id.* The Court concluded that the attorney did not sufficiently consult with the defendant about appeal and failed to make "any effort to obtain his wishes about an appeal after sentencing." *Id.* at 776.

The record here is mixed, at best, concerning whether Vonallman or his family ever directed or asked Scharff to file a notice of appeal. Vonallman testified, somewhat equivocatingly, that he asked Scharff to appeal. Members of the family asserted with more force

---

[1] *See id.* at 478 (deficient performance is a fact-specific inquiry).

that they directed Scharff to appeal. But the more credible testimony in this regard came from Scarff, who relayed that no one directly asked or instructed him to file an appeal.

But things are more troubled with respect to Scharff's consultation with Vonallman about an appeal. By Scharff's own admission, Scharff never asked Vonallman after sentencing if he wanted to appeal; Scharff never spoke to Vonallman at all after sentencing. Dkt. No. 686 at 56:7-15. Scharff only discussed the topic hypothetically *before* sentencing. He later defended his actions based on his impression that thoroughly discussing the plea agreement's appellate waiver with his client left no reasonable expectation of success for any appeal. In these circumstances, however, Scharff's actions fell short of effective representation.

A duty to consult about an appeal can arise when *either* a rational defendant would want to appeal, which is likely not the case here, *or* when a particular defendant reasonably demonstrated interest in appealing, which is presented here. *Flores-Ortega*, 528 U.S. at 480. Although Scharff discussed the plea agreement's appellate waiver with Vonallman *before* sentencing,[2] this was in expectation of a lower sentence than the one ultimately imposed. After sentencing, it appears everyone on the defense was surprised and angered by the sentence imposed, including both Vonallman and Scharff. A reasonable defendant who is surprised and angered by the sentence imposed might wish to revisit the topic of an appeal. Consistent with that notion, Vonallman and his family reasonably demonstrated interest in appealing. Indeed, even Scharff indicated that he needed to consult with Vonallman about an appeal, at least

---

[2] The waiver was also raised with Vonallman at his plea hearing, where he acknowledged understanding the waiver. *See* Dkt. No. 623 (transcript of plea hearing); *id.* at 10:22–11:18; *id.* at 17:14–18 ("Gentlemen, as part of each of your plea agreements, you're each giving up the right to appeal your sentence as well as the right to contest your sentence in any other type of post-conviction proceeding, except in limited circumstances."), *id.* at 17:19–22 ("[D]o you understand and agree to waive, or give up, your right to appeal and to contest your sentence? . . . . DEFENDANT VONALLMAN: Yes, Your Honor.").

according to Connally's credible recollection. Thus, even assuming a direct appeal would likely be fruitless due to the plea agreement's appellate waiver, there were presented here sufficient indicia of a desire to appeal such that counsel's duty to consult the client about an appeal was triggered. And if there was here any duty to consult the client post-sentencing about an appeal, there can be no doubt that the duty was breached because Scharff had no contact with Vonallman once he was sentenced.

The Court is not persuaded by the Government's argument that counsel's duty to consult was fulfilled in this case by Scharff's conversations with Vonallman *before* sentencing. The duty to consult includes "advising the defendant about the advantages and disadvantages of taking an appeal" but also requires "making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478.  The Government's argument might have some merit if, after a thorough pre-sentencing consultation with counsel, Vonallman had received the sentence he expected to receive. The Supreme Court discussed this type of situation in *Flores-Ortega*:

> [S]uppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," . . . as a constitutional matter, in not consulting with such a defendant regarding an appeal.

*Flores-Ortega*, 528 U.S. at 479 (citation omitted). In such a situation—where the defendant received precisely what he expected and discussed at length with counsel before sentencing—the need for counsel to ascertain the defendant's wishes has already been satisfied. But a defendant's wishes could reasonably change from before sentencing—when hopes were high for a comparatively light sentence—to after imposition of the sentence and all involved are angered by a "shocking" longer-than-expected sentence. It bears emphasis that the relative merit of the

appeal isn't the lone dispositive consideration. In these circumstances, Scharff should have consulted a final time with his client after sentencing, given the unexpected, disappointing sentence and the not-in-dispute expressions from family that Scharff at least consider an appeal. *See* Dkt. No. 686 at 65:1-9 (Scharff conceding it was possible that Vonallman's family expressed, "'We need to attack this thing [the sentence] somehow.'").

### B.   Counsel's Deficient Performance Prejudiced Vonallman.

To show prejudice when counsel fails to consult with a defendant about an appeal, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Tighe,* 91 F.4th at 776 (citing *Flores-Ortega*, 528 U.S. at 484). Importantly, a defendant is not required to "demonstrate his hypothetical appeal has merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal." *Id.* (citing *Flores-Ortega*, 528 U.S. at 486).

Vonallman was prejudiced by his counsel's failure to provide effective assistance of counsel because Vonallman has demonstrated that, "but for [his counsel's] deficient conduct, he would have appealed." *See id.*; *see also U.S. v. Cong Van Pham,* 722 F.3d 320, 327 (5th Cir. 2013) ("In the absence of any self-evident reason why Pham would not have filed a direct appeal, and without any regard to the potential merits of such an appeal, we conclude that he has established prejudice under *Flores-Ortega*."). As explained above, Vonallman and his family reasonably expressed an interest in appealing. Vonallman has therefore demonstrated that he was prejudiced by Scharff's failure to consult Vonallman and concomitant failure to file a notice of appeal.

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that Movant Vonallman's Motion to Vacate, Dkt. No. 579, be **DISMISSED WITHOUT PREJUDICE.** The Movant should be **GRANTED** an out-of-time appeal, and the Clerk of Court should be ordered to re-enter the criminal judgment on the docket, thereby restarting the time for appeal under Federal Rule of Appellate Procedure 4(b)(1)(A). *See Gaytan-Ortiz,* 308 F. App'x at 800.

The Court also recommends appointment of counsel for the movant's direct appeal. The following counsel should be **APPOINTED** to represent Vonallman on direct appeal:

Angela J. Moore

Law Office of Angela Moore

316 Martinez Street, San Antonio, TX 78205

210-364-0013

Email: amoorelaw2019@gmail.com

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be **filed within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59. The objecting party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or

recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 3rd day of October, 2024.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE